744 So.2d 883 (1999)
FIRST AMERICAN TITLE INSURANCE CORPORATION
v.
Gary D. SILVERNELL and Barbara J. Silvernell.
Lan Darty et al.
v.
Gary D. Silvernell and Barbara J. Silvernell.
1980394 and 1980521.
Supreme Court of Alabama.
October 1, 1999.
*884 John S. Bowman, Jr., and Theresa R. Jenkins of Balch & Bingham, L.L.P., Montgomery; and James L. Martin, Eufaula, for appellant First American Title Ins. Corp.
Alan C. Livingston and William W. Nichols of Lee & Mclnish, Dothan, for appellants Lan Darty, Alfred Saliba Realty Corp., and Coldwell Banker Residential Affiliates.
Deborah W. Hicks, Eufaula; and F. Paul Bland, Jr., and Sarah Posner, Trial Lawyers for Public Justice, Washington, D.C., for appellees.
PER CURIAM.
These appeals raise the question whether the trial judge erred in denying the defendants' motions to compel arbitration of a number of claims involving different defendants. The defendants, Lan Darty, Alfred Saliba Realty Corporation, Coldwell Banker Real Estate Corporation (all collectively referred to as "the real estate agents") and First American Title Insurance Corporation ("First American") claim that the judge did err in denying the motions. They ask us to reverse the order denying their motions to compel arbitration. For the reasons discussed below, we conclude that the trial court erred in denying First American's motion to compel arbitration, but that it correctly denied the other defendants' motions to compel. Accordingly, we affirm in part, reverse in part, and remand.

Facts and Procedural History
These appeals arise from the same litigation this Court considered in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999). The underlying dispute arose from the Silvernells' purchase of real estate in Barbour County. At the time this dispute arose, Darty was an agent employed by Alfred Saliba Realty Corporation, which was an affiliate of Coldwell Banker Real Estate Corporation. It appears undisputed that Darty, and through him Saliba and Coldwell, acted as the Silvernells'"buyer broker" and assisted them in locating the property. Additional facts, as we stated them in McDougle, are as follows:
"Charles McDougle, a licensed attorney, handled the closing and also served as the agent and signatory for [First American], which, during the closing, issued to the Silvernells a `Commitment For Title Insurance.' That commitment read in part:
"`First American Title Insurance Company, a corporation of California, herein called the Company, for a valuable consideration, hereby commits to issue its policy or policies of title insurance as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby, in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.
"`....
"`This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the Effective Date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided *885 that the failure to issue such policy or policies is not the fault of the Company.
"`....
"`Conditions and Stipulations.
"`....
"`... In no event shall [the Company's] liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions, the Exclusions from Coverage and the Conditions and Stipulations of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.'
"... Following the closing, First American issued a title insurance policy to the Silvernells; that policy contained the following arbitration provision:
"`Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.
"`The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.
"`A copy of the Rules may be obtained from the Company upon request.'
"Upon discovering certain defects in their title, the Silvernells sued McDougle, his law firm, [First American and the real estate agents], seeking damages based on allegations of fraud, wantonness, negligence, and breach of fiduciary duty."
McDougle, 738 So.2d at 806-07. McDougle and his law firm moved to compel arbitration. The real estate agents subsequently joined in that motion and adopted the grounds asserted therein. First American later filed its own motion seeking an order compelling arbitration. The trial court denied each of those motions.
In McDougle, this Court held that the Silvernells were bound by the provisions of the arbitration agreement included in the Silvernell-First American contract of insurance. McDougle, 738 So.2d at 809. Further, this Court held in McDougle that McDougle and his law firm had standing to compel arbitration because McDougle had served as First American's agent at the closing. Id.

Discussion

I. First American's Appeal Case No. 1980394
First American states the legal issue presented by its appeal as follows:
"The sole issue presented on appeal is whether the Circuit Court of Barbour County erred in denying First American's motion to compel arbitration of the *886 Silvernells' claims against it, as expressly provided by the owner's policy of title insurance which was issued to the Silvernells by First American."
In McDougle, this Court determined that the Silvernells were bound by the terms of the arbitration provision in their contract with First American. That conclusion was a necessary step in reaching this Court's conclusion in that case that McDougle and his law firm had standing to move for an order compelling arbitration of the claims against them.
We conclude that the order denying First American's motion to compel arbitration is due to be reversed, on the authority of McDougle, which contains a more complete discussion of the reasons that led us to the conclusion we reached in that case.

II. The Real Estate Agents' Appeal Case No. 1980521
The issue presented by this appeal, whether the real estate agents have a right to compel arbitration, is different from the issue presented by First American. Significantly, the real estate agents were not signatories to the agreement in which the arbitration clause appeared; nor were they agents of First Americanunlike the lawyer in McDougle, in which this Court held that the lawyer and his law firm, even though they were nonsignatories to the agreement, had such a right. We first state our standard of review.
It is well settled that when an appellate court reviews on appeal a trial court's denial of a motion to compel arbitration, the reviewing court applies a de novo standard of review. Crimson Industries, Inc. v. Kirkland, 736 So.2d 597 (Ala. 1999); Patrick Home Center, Inc. v. Karr, 730 So.2d 1171 (Ala.1999).[1] Applying that standard of review, we conclude that the trial court properly denied the real estate agents' motions to compel arbitration.
The Silvernellsthe plaintiffsdescribe their relationship with the real estate agents as follows:
"The Real Estate Agents, specifically Darty, acted as the Silvernells' buyerbroker for the transaction. Under the contract, however, the Real Estate Agents represented the Seller, and the Seller gave Darty a power of attorney to sign the closing statement."
Brief of Appellees at 3. The real estate agents describe their relationship with the Silvernells as follows:
"In or about December, 1993, the Silvernells engaged the services of Defendant Lan Darty, a real estate broker with Alfred Saliba Realty in Dothan, Alabama, to help them obtain property in Alabama suitable for hunting. Darty subsequently located and showed to the Silvernells property in Barbour County known as the `Bama Hill Farm.' The Silvernells eventually made an offer on the property which, after much negotiation, was accepted by the seller."
Brief of Appellants at 4. The real estate agents concede that they were not signatories to the arbitration agreement, but they contend that the Silvernells' claims against them are intimately founded in and intertwined with the claims the Silvernells have made against McDougle, his law firm, and First American.
The real estate agents cite Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir.1993); McBro Planning & Development Co. v. Triangle Electrical Construction Co., 741 F.2d 342, 344 (11th Cir.1984); and Ex parte Napier, 723 So.2d 49 (Ala.1998), in support of their argument. The court of appeals for one federal circuit has written:
"[A] signatory [is] bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of the close relationship between the entities involved, as well as the relationship of the alleged *887 wrongs to the nonsignatory's obligations and duties in the contract ... and [the fact that] the claims were "intimately founded in and intertwined with the underlying contract obligations."'"
Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 779 (2d Cir.1995), quoting Sunkist, 10 F.3d at 757. The key, of course, is to determine the extent to which the claims against the signatories and the nonsignatories are intertwined and to determine the nature of the relationship between the parties.
In one of this Court's previous cases, Ex parte Napier, supra, the plaintiffs bought a mobile home, and their purchase agreement included an arbitration provision. The plaintiffs stated various fraud claims in connection with the sale of the mobile home and the sale of a policy of insurance that the plaintiffs' financing company had required them to acquire as a condition for financing the purchase. The plaintiffs made very specific conspiracy allegations:
"Furthermore, [the plaintiffs] allege that the four named defendants conspired against them. Their conspiracy allegations state:
"`Defendants schemed, planned, designed, contrived, combined, federated and conspired amongst themselves to misrepresent material facts to the plaintiffs, failed to disclose material facts to the plaintiffs and deceived the plaintiffs.
"`Defendants, JOHNSON [the seller], [and] GREEN TREE [the financing company] ... could not complete the scheme to defraud plaintiffs without a co-conspirator located in Alabama to countersign the insurance policy.
"`MANNING [the agent of the insurance company], acting individually and in the line and scope of employment with FOREMOST [the insurance company that issued the policy], schemed, planned, designed, contrived, combined, federated, and conspired with JOHNSON, [and] GREEN TREE ... to defraud [the] plaintiffs.'
"Unlike the general conspiracy allegations in [Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998) ], which did not identify the defendants who were alleged to have been involved in the conspiracy, the complaint in this case makes specific allegations of conspiracy against [the defendants]. Therefore, the claims against the nonsignatories have a connection to the claims against the signatories that is sufficient to subject all of the claims to arbitration."
Napier, 723 So.2d at 54. In Med Center Cars, in contrast, the complaint had alleged that the "`Defendants, or any combination of them'" had conspired against the plaintiffs. 727 So.2d at 18 (emphasis added in Med Center Cars.) This Court held:
"The plaintiffs' conspiracy allegation alleges that any combination of defendants, which could be found to include only nonsignatory defendants, conspired to violate the Alabama Mini-Code. If only nonsignatories were found to have conspired, then the claims against them would not have an integral connection with the claims against the signatory defendants so as to subject all claims to arbitration."
Id. (emphasis in original).
In view of the allegations in the plaintiffs' complaint that the real estate defendants conspired against them, it appears that the facts of this case fall somewhere between the facts of Ex parte Napier and those of Med Center Cars. Med Center Cars, however, would seem to suggest a conclusion that the allegations against the real estate agents may not be subject to arbitration, because the Silvernells did not allege that First American was a party to the conspiracy. In fact, these plaintiffs make no allegation that a signatory to the arbitration provision was involved in any kind of conspiracy.
*888 The arbitration provision in the Silvernell-First American contract provided:
"14. ARBITRATION
"Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters, when the Amount of Insurance is $1,000,000.00 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000.00 shall be arbitrated only when agreed to by both the Company and the insured."
(Emphasis added.) Unlike the scope of the agreement in Ex parte Napier, the scope of the arbitration agreement at issue in this case is relatively narrow. In Napier, the arbitration agreement at issue encompassed, among other things, disputes "arising from or relating to ... the relationships which [resulted] from [the] Contract." 723 So.2d at 51. That provision was, therefore, broad enough to encompass disputed claims arising out of the relationship of the plaintiff insureds (Napier and Godfrey) and the nonsignatory insurer (Foremost) and its agent (Manning). In addition, this Court in Napier concluded that the plaintiffs had specifically alleged that the named defendants, including Foremost and Manning, had conspired against them. For these reasons, this Court held that the plaintiffs' claims against the nonsignatories had a connection to the claims against the signatories sufficient to estop the plaintiffs from denying the enforceability of the arbitration provision.
This present case is distinguishable from Napier. The language of the arbitration agreement in this case demonstrates that the parties did not contemplate that the agreement would afford nonsignatories the right to compel arbitration. The agreement specifically refers to arbitrable matters as those that arise "between the Company and the insured."
Based on our review of the arbitration agreement at issue here, we conclude that the real estate agents are not entitled to compel arbitration. See First Family Financial Services, Inc. v. Rogers, 736 So.2d 553 (Ala.1999), where this Court also concluded that a nonsignatory did not have the right to compel arbitration, because the arbitration agreement had been narrowly tailored. See also cases cited in First Family.

Conclusion
The trial court erred in denying First American's motion to compel arbitration of the claims against it. We therefore reverse the order in case number 1980394, and we remand that case with instructions to grant First American's motion to compel arbitration. However, the trial court properly denied the real estate agents' motions to compel arbitration of the claims against them. Accordingly, we affirm the order in case number 1980521.
1980394REVERSED AND REMANDED.
1980524AFFIRMED.
HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
HOOPER, C.J., and MADDOX, J., concur as to Part I (No. 1980394), but dissent as to Part II (No. 1980521).
COOK and JOHNSTONE, JJ., concur as to Part II, but dissent as to Part I.
MADDOX, Justice (concurring as to Part I and dissenting as to Part II).
I concur in Part I of the main opinion, holding that First American was entitled to an order compelling arbitration of the plaintiffs' claims against it.
*889 I must respectfully dissent, however, from Part II. I believe the real estate defendants were entitled to an order compelling arbitration of the claims against them, because I believe those claims are intimately founded in and intertwined with the underlying contract obligations. In considering that issue, I believe that one must consider the effect of this Court's previous decision in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), on this present case. In McDougle, this Court held that McDougle and his law firm were entitled to have the claims against them submitted to arbitration. The Silvernells' complaint in McDougle, as mentioned in the main opinion, named McDougle as an alleged participant in a conspiracy. This Court held that McDougle was acting as an agent of First American, and, in fact, McDougle signed the contract on behalf of First American at the closing. McDougle, 738 So.2d at 806-07.
As this Court held in Ex parte Gray, 686 So.2d 250, 251 (Ala.1996), "A party should not be able to avoid an arbitration agreement merely by suing an employee of a principal." The analysis behind that statement is also applicable in this current case, especially in light of this Court's holding in McDougle; consequently, I would hold that this case is more similar to Ex parte Napier, 723 So.2d 49 (Ala.1998), than it is to Med Center Cars, Inc. v. Smith, 727 So.2d 9 (Ala.1998), in that the claims against the real estate agents are sufficiently intertwined with the claims against McDougle and First American to require that all the claims be submitted to arbitration. The result of the holding in this case is that the plaintiffs are going to have to arbitrate their claims against First American and McDougle, but can try their case against the agents. The allegations of the plaintiffs' complaint show that the claims they allege against each of the defendants are intimately founded in and inextricably intertwined one with the other, and I do not believe the law requires that one set of claims be arbitrated and the other go to trial. Consequently, I must respectfully disagree with the holding of the main opinion in Part II.
COOK, Justice (concurring as to Part II and dissenting as to Part I).
I concur in case number 1980521. I agree that the defendants Lan Darty, Alfred Saliba Realty Corporation, and Coldwell Banker Real Estate Corporation are not entitled to compel arbitration.
I dissent in case number 1980394, for the same reasons I expressed in my dissent in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999).
JOHNSTONE, Justice (concurring as to Part II and dissenting as to Part I).
I concur in the affirmance of the denial, by the trial court, of the motions to compel arbitration filed by the defendants-appellants Lan Darty, Alfred Saliba Realty Corporation, and Coldwell Banker Real Estate Corporation, who and which appeal in case number 1980521.
I respectfully dissent from the reversal, by the main opinion, of the denial, by the trial court, of the motion to compel arbitration filed by the defendant-appellant First American Title Insurance Corporation, which appeals in case number 1980394. My reason for this dissent is, as explained in my dissent in McDougle v. Silvernell, 738 So.2d 806 (Ala.1999), that the title insurance binder, to which the Silvernells did agree, did not validly incorporate by reference the arbitration provisions included in the later-issued policy of title insurance. The Silvernells did not, on any valid theory, agree to arbitration. My rationale for this dissent is further reason for my concurrence in case number 1980521.
NOTES
[1] We note that the Silvernells have cited earlier cases wherein this Court applied an "abuse-of-discretion" standard of review. However, in our more recent cases, this Court has held that the de novo standard applies.