# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30582
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
April 21, 2020

Lyle W. Cayce
Clerk

CHIRAG PATEL,

      Plaintiff - Appellant

v.

REGIONS BANK, an Alabama corporation; TRANS UNION, L.L.C., a Delaware limited liability company; EXPERIAN INFORMATION SOLUTIONS, INCORPORATED, an Ohio corporation,

      Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:18-CV-796

Before STEWART, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

Chirag Patel ("Patel") is a customer of defendant Regions Bank ("Regions") and holds a credit card with Regions that was purportedly stolen and used to make around $18,000 USD in unauthorized purchases. According to the credit card agreement ("the agreement"), any and all claims arising from activities related to the card are subject to Alabama law and must be resolved

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30582

by arbitration. After Patel filed this suit, Regions filed a motion to compel arbitration in order to give effect to the arbitration clause of the agreement. Patel opposed the motion to compel arbitration and, alternatively, filed a motion to compel arbitration against two of the three major credit reporting bureaus that remain party to this suit, defendant TransUnion, LLC ("TransUnion") and defendant Experian Information Solutions, Inc. ("Experian"). In doing so, Patel asserted that if his claims against Regions are subject to arbitration, that TransUnion and Experian are also subject to arbitration because of their contractual relationships with Regions. The district court disagreed and granted Regions' motion to compel arbitration and denied Patel's motion to compel arbitration. Patel timely appealed. For the reasons set forth herein, we AFFIRM the district court's denial of Patel's motion to compel arbitration against TransUnion and Experian.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

On November 22, 2016, Patel applied for a consumer credit card with Regions. The credit card application indicated that, if approved, Patel's account would be governed by the credit card agreement sent with the credit card. The application also indicates that the agreement provides that "all disputes regarding an Account or the Agreement are subject to binding arbitration which impacts your rights to participate in a class action or similar judicial proceeding." Page six of the agreement states that Regions "may get and review [the consumer's] credit history from credit reporting agencies and others. [Regions] also may provide information about [the consumer] and [the consumer's] account to credit reporting agencies and others." Regions then provides its address for consumer debtors to send letters if the consumer believes that Regions has "furnished inaccurate or incomplete information" about the consumer to the credit reporting agency. The agreement

2

No. 19-30582

unequivocally provides that it is governed by Alabama law and any applicable federal laws. Regions approved Patel's application on November 23, 2016 and sent a copy of the agreement thereafter.   In December 2017, Patel was made aware of unfamiliar charges on his Regions Bank Visa credit card that maxed out his credit line of $18,000. After contesting these charges via phone and in writing, Regions investigated the charges and ultimately determined that the charges were not fraudulent and required Patel to pay the balance on the account. Patel maintained that the charges were indeed fraudulent and refused to pay the balance. In turn, Regions reported the delinquency to the three major credit reporting agencies ("CRAs") Equifax, TransUnion, and Experian.   Patel formally disputed the charges with each agency—he claims that they all "failed to reasonably investigate" the charges. He says that his credit has been severely damaged, resulting in the closing of other accounts and his inability to lease an apartment in his name.

## B. Procedural History

Patel filed suit on August 24, 2018 against Regions and the CRAs.   He filed a claim under the Fair Credit Reporting Act (15 U.S.C. § 1681) against the CRAs and Regions along with additional claims against Regions under the Telephone Consumer Protection Act (47 U.S.C. § 227) and the Fair Credit Billing Act (15 U.S.C. § 1666(a)). Patel settled his claims with Equifax which left only the claims against TransUnion, Experian, and Regions. Regions moved to compel arbitration pursuant to the arbitration provision in the agreement. Several days later, TransUnion and Experian moved to stay the claims against them pending the outcome of the arbitration between Patel and Regions.   Patel opposed Regions' motion to compel arbitration but, simultaneously, moved to compel TransUnion and Experian to arbitration in the event that Regions' motion to compel was granted. TransUnion and Experian jointly opposed Patel's motion to compel arbitration, but, Regions did

3

not oppose the arbitration of all of the claims against all of the defendants in a single arbitration proceeding.

The district court granted Regions' motion to compel arbitration and denied Patel's motion to compel the remaining CRAs to arbitration. It reasoned, "there is a rebuttable presumption that non-signatories to a contract cannot be bound by arbitration agreements. (citations omitted). There is no provision setting forth that TransUnion or Experian were to directly benefit from the terms of the Application or the Credit Card Agreement." Patel timely appeals the denial of his motion to compel arbitration.

## II.    STANDARD OF REVIEW

We review a district court's denial of a motion to compel arbitration de novo. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012).

## III.    DISCUSSION

The parties agree that this dispute is governed by Alabama law. The sole issue before us is whether the non-signatory defendants-appellees TransUnion and Experian can be compelled to arbitration pursuant to an agreement to which they were neither expressly nor implicitly a party. We hold that the district court properly denied Patel's motion to compel TransUnion and Experian to arbitration.

Generally, Patel argues that the district court erred as a matter of law "by injecting an inapplicable rule of Texas state contract law governing third-party beneficiaries." Indeed, the district court applied Fifth Circuit law with respect to the federal doctrine of direct benefits estoppel; however, Patel concedes that the federal doctrine is consistent with Alabama's versions of the doctrine. In any event, the outcome is the same under comparable Alabama doctrines. The district court's application of Fifth Circuit precedent yields the same outcome as if it applied Alabama's equitable estoppel theory.

"Assent to arbitrate is usually to be manifested through a party's signature on the contract containing the arbitration provision." *Ex parte Stamey*, 776 So.2d 85, 88–89 (Ala. 2000). But, "both Federal courts and Alabama courts have enforced exceptions to this rule," one of those exceptions being equitable estoppel and the other "a third-party beneficiary theory that affords the third party all the rights and benefits, as well as the burdens, of that contract, including those associated with arbitration." *Id.* at 89 (collecting cases). Twenty years ago, Alabama's equitable estoppel theory was as follows:

> In order for a party to be equitably estopped from asserting that an arbitration agreement cannot be enforced by a nonparty, the arbitration provision itself must indicate that the party resisting arbitration has assented to the submission of claims against nonparties—claims that would otherwise fall within the scope of the arbitration provision—to arbitration. *See Ex parte Napier*, [723 So.2d 49, 53 (Ala. 1998)]. All that is required is (1) that the scope of the arbitration agreement signed by the party resisting arbitration be broad enough to encompass those claims made by that party against non-signatories [sic], or that those claims be "intimately founded in and intertwined with" the claims made by the party resisting arbitration against an entity that is a party to the contract, and (2) that the description of the parties subject to the arbitration agreement not be so restrictive as to preclude arbitration by the party seeking it. *See Id.* In other words, the language of the arbitration agreement must be so broad that the nonparty could assert that in reliance on that language he believed he had the right to have the claims against him submitted to arbitration, and, therefore, that he saw no need to enter into a second arbitration agreement.

*Id.*

Now, Alabama's equitable estoppel theory appears to be a fraternal twin of Alabama's third-party beneficiary status theory. Under the third-party beneficiary status theory, a non-signatory can be subject to an arbitration agreement "if the contracting parties intended . . . to bestow a direct benefit, as opposed to incidental benefit, [sic] upon the third party" when the contract

was executed. *Custom Performance, Inc. v. Dawson*, 57 So.3d.90, 97 (Ala. 2010). Alabama's equitable estoppel theory says that "[r]egardless of whether a non-signatory [sic] is *in fact* a third-party beneficiary, the non-signatory [sic] is *treated* as a third-party beneficiary—and is equitably estopped from avoiding arbitration—when he or she asserts legal claims to enforce rights or obtain benefits *that depend on the existence of the contract that contains the arbitration agreement.*" *Id.* at 97–98 (emphasis in original).

Indeed, the arbitration provision provides that "either party may elect to resolve by BINDING ARBITRATION any . . . claim . . . between you and us . . . ." But, it is clear that neither TransUnion nor Experian are parties to the agreement because they did not sign it; as nonparties/non-signatories to the agreement, TransUnion and Experian also never asserted any claims against Patel in order to enforce the arbitration agreement against him. Patel argues that the CRAs obtained a direct benefit because they could not conduct business with Regions—or anyone else—but for Patel's authorization to obtain and provide his credit reports. He argues that these authorizations conferred a direct benefit to the CRAs that "enable the credit reporting agencies to legally render services in compliance with the FCRA" and "avoid civil liability exposure for noncompliance."

The bottom line here is that TransUnion and Experian have no claims against Regions or Patel that they seek to resolve by arbitration. Patel wants to enforce the agreement's arbitration provision against TransUnion and Experian to resolve the claims he has against them. The agreement does contemplate the consolidation of claims against third parties, but in a limited fashion. It says that the "agreement to arbitrate shall include any Claim involving our current and former officers, directors, employees . . . any third party that assigned any agreements to us . . . and any such Claim against any of those parties may be joined or consolidated with any related Claim against

us in a single arbitration proceeding." Patel has not shown us how TransUnion or Experian qualifies as a third party that has "assigned any agreements" to Regions. In turn, it does not seem like Regions, or Patel for that matter, "intended to bestow a direct benefit" on them. Accordingly, we hold that neither Alabama's equitable estoppel theory nor its third-party beneficiary status theory are applicable to compel TransUnion and Experian to arbitration.

## IV.    CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's denial of Patel's motion to compel arbitration.