On Remand from the Supreme Court of the United States
The issue presented on this remand from the Supreme Court of the United States is whether the Federal Arbitration Act, 9 U.S.C. § 1-15 (1982), requires arbitration of the claims at issue. The original opinion of this Court is published at628 So.2d 361 (Ala. 1993). In it, this Court treated Juliette Lopez's "appeal" from the trial court's order compelling arbitration as a petition for a writ of mandamus and granted the writ:
 "Juliette Lopez filed an 'appeal' from an order of the Circuit Court of Montgomery County compelling her to arbitrate her claims against Home Buyers Warranty Corporation II ('Home Buyers'). The issue here is whether a claim based on a homeowner's warranty is subject to arbitration under the provisions of the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1-15.
 "Because 'a petition for a writ of mandamus is the proper means to test a trial court's granting of a motion to arbitrate,' Ex parte Alexander, 558 So.2d 364, 365 (Ala. 1990), we treat Lopez's filing, although it was in the form of an appeal, as a petition for a writ of mandamus requiring the Montgomery Circuit Court to vacate its order compelling arbitration. See A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358, 360 (Ala. 1990). We grant the writ."
628 So.2d at 362. The essential facts of this case are set out in the original opinion as follows:
 "Mrs. Lopez and her husband purchased a house in Montgomery, Alabama, from Mr. and Mrs. Glen Browder on August 31, 1989. The Browders had listed the house with, and the sale was conducted in part through agents of, Aronov Realty Company, Inc. ('Aronov'). The Lopezes executed the closing documents on the house while they were in Key West, Florida. The house was covered by a [Home Buyers Warranty Corporation] warranty against specified defects. This warranty was issued in 1988 from the Home Buyers office in Denver, Colorado, to the Browders, as the original homeowners. Under the terms of the warranty, a Home Buyers representative was to inspect the house during its construction. The warranty coverage transferred to the Lopezes when they bought the house from the Browders.
 "Mrs. Lopez moved into the house in June 1990; shortly thereafter, she noticed cracks in the floors and noticed other structural defects. Her attorney notified Home Buyers' regional office in Tucker, Georgia, by letter dated March 1, 1991, of her potential claim under her Home Buyers warranty. A representative from Home Buyers' warranty service office in Denver, Colorado, wrote Mrs. Lopez on March 6, 1991, and informed her of the procedure for filing a claim for coverage of structural damage under her warranty. On April 19, 1991, Mrs. Lopez sued Home Buyers for recovery of the costs of structural repairs to her house. She also sued Aronov, alleging fraud in regard to the sale of the house.
 "Home Buyers moved to dismiss, or in the alternative, to compel arbitration under the terms of the arbitration clause contained in the warranty. That arbitration clause states, in part:
 " 'Should the Builder or the Homebuyer(s) disagree with the Insurer's decision to deny the claim as recommended by the Service, the contesting party shall call for conciliation with the Service or an arbitration to be conducted by the American Arbitration Association (A.A.A.) or other mutually agreeable arbitration service at the Service's expense. . . . The voluntary dispute settlement process provided herein shall be a condition precedent to the commencement of any litigation by any party to compel compliance with the warranty *Page 37 
documents or to seek relief for any dispute arising out of this program.'
 "On October 19, 1992, the trial court ordered Mrs. Lopez to submit her claims against Home Buyers to arbitration under the terms of the warranty contract. The claims against Aronov have been stayed pending our ruling on the enforceability of the arbitration clause. Although the trial court's order compelling arbitration purported to 'dismiss' Mrs. Lopez's claims against Home Buyers, we understand that 'dismissal' to be in reality a stay of the proceedings against Home Buyers pending arbitration."
628 So.2d at 362-63.
Under Alabama law, the specific enforcement of a predispute arbitration agreement violates both our statutory law and public policy, unless federal law preempts state law. §8-1-41(3), Ala. Code 1975; Wells v. Mobile County Bd. ofRealtors, Inc., 387 So.2d 140, 144 (Ala. 1980); Bozeman v.Gilbert, 1 Ala. 90, 91 (1840); Lopez v. Home Buyers, supra, at 363. In its first opinion in this case, this Court determined that in this case federal law did not preempt our law and public policy against enforcement of predispute agreements to arbitrate, because we could find no evidence that the parties "contemplated substantial interstate activity" when they entered into the warranty contract. We held that under the "contemplation" test,[1] Mrs. Lopez was not required to submit her warranty claims against Home Buyers to arbitration:
 "In this case, we find no evidence that the parties contemplated substantial interstate activity when they entered into the warranty contract. Therefore, the FAA does not apply. We hold that, under the 'contemplation' test, Mrs. Lopez is not required to submit her warranty claims [against] Home Buyers to arbitration. See Ex parte Alexander, 558 So.2d 364, 366 (Ala. 1990). The [writ of mandamus directing the circuit court to vacate its order compelling arbitration] is due to be granted for the foregoing reasons."
628 So.2d at 364.
The Supreme Court of the United States vacated the judgment of this Court and remanded the case for further consideration in light of its opinion in Allied-Bruce Terminix Cos. v.Dobson, 513 U.S. ___, ___, 115 S.Ct. 834, 837, 130 L.Ed.2d 753
(1995). Home Buyers Warranty Corp. II v. Lopez, 513 U.S. ___, ___, 115 S.Ct. 930, ___, 130 L.Ed.2d 876 (1995). The cause has been submitted on the order of remand and on the original briefs.[2]
In Allied-Bruce Terminix, supra, the United States Supreme Court rejected the "contemplation" test followed by this Court, writing:
"III
 "The Federal Arbitration Act, § 2, provides that a
 " 'written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2 (emphasis added [by the Supreme Court]).
 "The initial interpretive question focuses upon the words 'involving commerce.' These words are broader than the often-found words of art 'in commerce.' . . .
 "After examining the statute's language, background, and structure, we conclude that the word 'involving' is broad and is indeed the functional equivalent of 'affecting.' . . .
". . . .
 ". . . [W]e conclude that the word 'involving,' like 'affecting,' signals an intent to *Page 38 
exercise Congress's commerce power to the full.
"IV
 "Section 2 applies where there is 'a contract evidencing a transaction involving commerce.' 9 U.S.C. § 2 (emphasis added [by the Supreme Court]). The second interpretive question focuses on the [emphasized] words. Does 'evidencing a transaction' mean only that the transaction (that the contract 'evidences') must turn out, in fact to have involved interstate commerce? Or, does it mean more?
 "Many years ago, Second Circuit Chief Judge Lumbard said that the phrase meant considerably more. He wrote:
 " 'The significant question . . . is not whether, in carrying out the terms of the contract, the parties did cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they contemplated substantial interstate activity. . . .' Metro Industrial Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 387 (CA2 1961) (Lumbard, C.J., concurring) (second emphasis added [by the Supreme Court]).
 "The Supreme Court of Alabama, and several other courts, have followed this view, known as the 'contemplation of the parties' test. See, supra [513 U.S. at ___, 115 S.Ct. at 837].
 "We find the interpretive choice difficult, but for several reasons we conclude that the first interpretation ('commerce in fact') is more faithful to the statute than the second ('contemplation of the parties'). . . .
". . . .
 ". . . [W]e accept the 'commerce in fact' interpretation, reading the Act's language as insisting that the 'transaction' in fact 'involve' interstate commerce, even if the parties did not contemplate an interstate commerce connection."
513 U.S. at ___ _ ___, 115 S.Ct. at 839-43. Allied-BruceTerminix held that the language of the FAA, making enforceable an arbitration provision in "a contract evidencing a transaction involving commerce," is applicable "to the limits of Congress' Commerce Clause power," and that, because the transaction in that case involved interstate commerce, the FAA was applicable and preempted state law. Id., 513 U.S. at ___,115 S.Ct. at 837. See Terminix International Co. Ltd. v.Jackson, 669 So.2d 893 (Ala. 1995) (on remand opinion).
The trial court, when it compelled arbitration in this case, determined "that the facts surrounding the Home Buyers contract do support a finding that the contract has at least [the] slightest nexus with interstate commerce so as to bring the contract under the purview of the FAA."[3] This Court stated the facts supporting that conclusion:
 "Some of the facts supporting this finding are as follows: Home Buyers is a Colorado corporation and Plaintiff is an Alabama resident; if Plaintiff is not satisfied with the builder's performance, she must send an application to either Georgia or Colorado; the Home Buyers district office for the State of Alabama is in Tucker, Georgia; and the Home Buyers Claims Warranty Service Office is in Denver, Colorado."
See Lopez v. Home Buyers, supra, 628 So.2d at 363-64. The evidence reflects that in addition to those facts cited by the trial judge, this house has a Veterans' Administration loan guaranty and the title insurance was procured through a California company.
Therefore, in light of the United States Supreme Court's holding in Allied-Bruce Terminix, supra, and this Court's holdings in Allied-Bruce Terminix Cos. v. Dobson, [Ms. 1920473, November 3, 1995] ___ So.2d ___ (Ala. 1995), and TerminixInternational v. Jackson, supra, we hold that Mrs. Lopez's petition for a writ of mandamus directing the trial court to vacate its order compelling arbitration of the claims against Home Buyers is due to be denied. The trial court properly compelled arbitration of the claims against Home Buyers. The other claims *Page 39 
stated in the complaint are not subject to arbitration, and the litigation of those claims is not due to be stayed unless the Circuit Court, in exercising its discretion pursuant to the considerations discussed in Terminix International v. Jackson, supra, grants a stay of litigation as to those claims.
WRIT DENIED.
ALMON, HOUSTON, KENNEDY, INGRAM, and COOK, JJ., concur.
MADDOX, J., concurs in the result.
[1] The test applied in Ex parte Warren, 548 So.2d 157 (Ala.), cert. denied sub nom. Jim Skinner Ford, Inc. v. Warren,493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989).
[2] The issues presented on this remand were adequately addressed by the parties in their original briefs submitted to this Court.
[3] In our first opinion in this case we pointed out that this Court had "recently overruled the . . . 'slightest nexus' test in favor of the more reasoned approach of the 'contemplation' test applied in Ex parte Warren, 548 So.2d 157 (Ala.[1989])." 628 So.2d at 363. See n. 1, at 37, supra.